## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

GREGORY C. WHITE,                    :

      Petitioner,                  :      Case No. 3:07CV0026

 vs.                                  :      District Judge Walter Herbert Rice
                                            Magistrate Judge Sharon L. Ovington
ERNIE MOORE, Warden,                 :
Lebanon Correctional Institution,
                                     :
      Respondent.                  :

                                    :

## REPORT AND RECOMMENDATIONS[1]

### I.     INTRODUCTION

In May 2004, a grand jury in Clark County, Ohio indicted Petitioner Gregory C. White on two charges: Aggravated Robbery, as defined by Ohio Rev. Code §2911.01(A)(1); and Robbery, as defined by Ohio Rev. Code §2911.02(A)(2). (Doc. #8, Exhibit 1). During a hearing in December 2004, White entered guilty pleas to each count. The judge accepted White's guilty pleas, proceeded immediately to sentencing, and imposed the parties' agreed sentence of eight years on the Aggravated Robbery conviction plus two years on the Robbery conviction, to be served consecutively. (Doc. #8, Exhs. 2, 3).

White is currently an inmate in state custody. He brings this case *pro se* seeking a

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

writ of habeas corpus under 28 U.S.C. §2254 requiring his immediate release from incarceration.  He mainly contends that the trial court imposed a sentence upon him in violation of his rights under the United States Constitution and that his trial counsel provided constitutionally ineffective assistance of counsel.

The case is pending upon White's habeas corpus Petition (Doc. #1), Respondent's Return of Writ, White's Traverse (Doc. #12), White's Motion for Summary Judgment (Doc. #13), Respondent's Memorandum in Opposition (Doc. #14), White's Reply (Doc. #16), and the record as whole.

## II.  LEGAL BACKGROUND:  *Apprendi, Blakely, Foster*

Following his convictions and sentencing, White challenged his sentence in the Ohio Courts – as he does in the present case – based in part on three cases:  *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Blakely v. Washington*, 542 U.S. 296 (2004); and *State of Ohio v. Foster*, 109 Ohio St.3d 1 (2005).  A brief discussion of these three cases will illuminate not only what occurred to White in the Ohio courts but also the claims he raises in the present case.

In *Apprendi*, the United States Supreme Court held:

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.  With that exception, we endorse the statement...: '[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.'

*Apprendi*, 530 U.S. at 490 (citations omitted).

In *Blakely*, the Supreme Court applied *Apprendi* and held that the State of Washington's sentencing system violated a defendant's rights under the Sixth Amendment by allowing a sentencing judge to impose a sentence above sentencing range when the judicially determined facts supporting the enhancement were neither admitted by the defendant nor found by a jury beyond a reasonable doubt. *Blakely,* 542 U.S. at 303-04; *see United States v. Katzopoulos*, 437 F.3d 569, 575 (6th Cir. 2006).

Some months after *Blakely* was decided, White was sentenced to consecutive terms of incarceration lasting eight years (for Aggravated Robbery) and two years (for Robbery). Several months later, White challenged his sentence in the trial court based, in part, on *Apprendi* and *Blakely*. After an adverse ruling in the trial court, White filed an appeal in the Ohio Court of Appeals. While his appeal was pending, the Ohio Court of Appeals stayed White's case to await the Ohio Supreme Court's decision in *Foster*, in which several Ohio defendants challenged certain Ohio sentencing statutes under *Apprendi* and *Blakely*. (Doc. #8, Exh. 11).

The Ohio Supreme Court decided *Foster* on February 27, 2006 invalidating certain Ohio sentencing statutes. Applying *Apprendi* and *Blakely*, the Oho Supreme Court "'held that [Ohio] statutes that required 'judicial fact-finding before imposition of a sentence greater than the maximum term authorized by a jury verdict or the admission of the defendant' violated a defendant's right to a jury trial under the Sixth Amendment to the United States Constitution." *State of Ohio v. Payne*, 114 Ohio St.3d 502 (2007)(quoting in part *Foster*, 109 Ohio St.3d 1 (paragraph one of syllabus)); *see Minor v. Wilson*, 213 Fed.Appx. 450, 453 n.1

3

(6th Cir. 2007).

With *Apprendi*, *Blakely*, and *Foster* in mind, the present case turns next to the specifics of White's Ohio criminal proceedings.

## III.    PROCEDURAL BACKGROUND

### A.    <u>White's Plea Agreement and Sentencing</u>

During White's sentencing hearing, he acknowledged that he understood the plea agreement and that he was voluntarily pleading guilty to each charge in the indictment. (Doc. #8, Exh. 21 at 10-11).  White does not challenge the constitutional validity of his guilty pleas in this case. He instead challenges the validity of his sentencing under *Apprendi/Blakely* and further claims that his counsel provided constitutionally ineffective assistance.  Full understanding of White's constitutional claims thus begins with the record of the sentencing hearing.

The judge began White's plea/sentencing hearing by describing the parties' plea agreement including the agreed sentence of eight years (for Aggravated Robbery) and two years (for Robbery).  (Doc. #8, Exh. 21 at 2).  The judge further indicated his understanding that "The Court will impose those sentences as consecutive."  *Id*.

The prosecutor indicated that the judge had correctly described the parties' agreement. He then briefly reviewed the facts underlying the two criminal charges White faced.  (Doc. #8, Exh. 21 at 3).  The prosecutor next described White's criminal history to support the plea agreement and the parties' agreement to consecutive sentences.  *Id*. at 3-4.  The prosecutor stated that White was convicted in 1969 "of armed robbery for which he received a term of

4

ten to 25 years." *Id*. at 4. The prosecutor continued:

> Then in 1979 he was convicted of aggravated robbery and received a prison term of seven to 25 years. In 1989 he was convicted of aggravated robbery and received a prison term of 15 to 25 years plus a three year sentence on the gun speck [specification] that was attached to the conviction.
>
> So based upon the facts of the offenses involved here and the defendant[']s prior criminal history, notwithstanding the agreed sentence submitted to the Court, the factors with respect to imposing consecutive – with respect to the consecutive prison sentences in this case, the sentence would be necessary in this case to protect the public and punish the defendant.
>
> Also, I forgot to mention in the criminal history that while he was on parole from the 1989 case he committed a crime while on parole, and his criminal history which I've gone into here shows that consecutive terms are needed for this particular defendant. So I think that's pretty much a complete agreement with respect to the guilty plea and sentencing.

(Doc. #8, Exh. 21 at 4-5).

In response, White's counsel discussed the prosecutor's statements as follows:

> The agreement itself is consistent with our agreement here. We're not – the reasons for the sentence are those of the prosecutor, <u>not anything we agreed to</u>. In this case, based upon the notion and understanding that upon a change of plea from not guilty to guilty of both charges, it is agreed to disposition that the defendant would serve an eight year term on the aggravated robbery, and a two year term on the robbery charge of count two to give the defendant a total of ten years, with credit that he has towards that ten year sentence. He would ... enter a plea of guilty, and this is the agreement in the indictment.

(Doc. #8, Exh. 21 at 5-6)(emphasis added). The judge next asked White, in separate questions, whether he "agreed with the agreement," whether he understood the plea agreement, whether he discussed plea agreement with his counsel, whether he discussed with counsel any possible defenses or issues he could raise, and whether his counsel answered all

his questions about the pending charges and the plea agreement.  White answered, "Yes, sir" to each question.  *Id.* at 6-7.

During the judge's review of the plea agreement with White, the judge informed White that the maximum possible sentence he could receive was ten years (for Aggravated Robbery) and eight years (for Robbery) to be served consecutively for a total of eighteen years incarceration.  (Doc. #8, Exh. 21 at 7-9).

Turning to the length of sentence actually imposed – again, eight years (for Aggravated Robbery) plus two years (for Robbery), to be served consecutively, the judge provided the following explanation:

> The Court has no reason to postpone sentencing, and I will impose sentencing pursuant to the plea agreement and also under the guidelines of, the sentencing guidelines given to the Court on 2929.11 et cet[e]ra.  It is the Court's finding as to each count that the defendant does have a lengthy criminal history as stated by the prosecutor.
>
> The three felonies for robbery or aggravated robbery, as well as defendant's penitentiary sentences, and he does have a significant history of criminal conduct.  The parties have agreed that the Court impose an eight year sentence on this count.  I think that's certainly appropriate considering the sentencing guidelines and the potential harm, and in fact the psychological harm to the victim of the robbery offense.
>
> The Court notes a prison term is presumed necessary and also finds that based on the nature of the offense before the court.
>
> The Court will impose a sentence on count two, the charge of robbery, a felony of the second degree.  A prison sentence is necessary.  I will impose the agreed sentence for two years to the Ohio penitentiary, and I will order that the two year sentence run consecutive to the eight year sentence imposed in count one.
>
> The Court finds that the sentence is necessary to protect the public and

6

punish the defendant, not disproportionate to his conduct and any danger that he poses. I also find that the crimes were committed while the defendant was under a parole, or post-release control. I also find the harm so great, the defendant's conduct.

I also find that the defendant's criminal history shows that the defendant is a threat to the public....

The Court makes a finding that consecutive sentences are necessary under the facts that the defendant does have a significant criminal history, and the details, the sentence hearing of three robbery offenses, during the time he was on parole during the commission of this offense. There are facts supporting the Court's finding that the defendant's criminal history shows a need to protect the public, and these crimes were committed while on post-release control.

I also find that the harm was so great and unusual because the victim of the robbery would have significant psychological harm from the experience. And I do find it is necessary to protect the public and punish the defendant, not disproportionate to his conduct and the danger he imposed and again, that's based on his past conduct....

(Doc. #8, Exh. 21 at 12-14).

**B.    White's §2953.21 Motion**

A few months after sentencing White returned to the trial court by filing Motion under

Ohio Rev. Code §2953.21. He argued in part:

At sentencing in this case petitioner was deprived of effective assistance of counsel where such counsel allowed sentencing court to use an uncounseled prior conviction and rely upon sentencing factors not found by the jury nor admitted by defendant in addition to relying upon personal information known only to the court and not of record in rendering judgment. Referencing: *Blakely v. Washington*, 124 S.Ct. 2531 (2004).

(Doc. #8, Exh. 4 at 2)(reference in the original). White also maintained that his trial counsel

provided ineffective assistance in violation of his rights under the Sixth and Fourteenth

7

Amendments to the United States Constitution.  *Id*. at 5-9.  White argued that this ineffective assistance occurred when his counsel failed to object to the trial court's calculation of his sentence based on a prior conviction as well as the trial court's imposition of sentence without a presentence investigation report or a victim-impact statement.  (Doc. #8, Exh. 4 at 3-9).  White also contended that the maximum sentence he could have received was three years on the Aggravated Robbery conviction plus two years on the Robbery conviction, to be served concurrently.  *Id*.

The trial court rejected White's Motion in part because the sentence imposed upon him was an agreed sentence and because the Supreme Court "in *Blakely* stated, '**other than the fact of a prior conviction**, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury [or admitted by the defendant] and proved beyond a reasonable doubt.'" (Doc. #8, Exh. 5 at 1)(trial court's emphasis and brackets).  The trial court also found that White's counsel did not provide ineffective assistance.  *Id*. at 1-2.

### C.    Additional State-Court Proceedings

White challenged the denial of his §2953.21 Motion in the Ohio Court of Appeals. He again raised his *Apprendi/Blakely* claim along with his claim that counsel provided constitutionally ineffective assistance.  (Doc. #8, Exh. 7).

Rejecting White's contentions, the Ohio Court of Appeals explained in part:

> Given that he agreed to the sentence imposed, White has no viable argument under *Blakely* or *Booker*.  Moreover, in light of the agreed sentence, the absence of evidence of a prior conviction is immaterial, as is the absence

of a presentence investigation report or a victim-impact statement.  Because
White agreed to the sentence he received, trial counsel did not provide
ineffective assistance by failing to present mitigating evidence at the
sentencing hearing.

(Doc. #8, Exh. 13 at 3-4).

White's state-court proceedings ended when the Ohio Supreme Court declined to

accept his case for review.  *Id*., Exh. 17.


## IV.    WHITE'S FEDERAL HABEAS PETITION

In support of his habeas corpus Petition, White raises four grounds for relief:

Ground One:          Sentence void under 6th & 14th Amendment[s], U.S.
                     Constitution.

Supporting Facts:    State sentencing court used judicial factfindings to enhance
                     sentence beyond statutory maximum/minimum if three (3) years
                     contrary to clearly established federal law of *Blakely v.
                     Washington*, 124 S.Ct. 2531 (2004).

Ground Two:          Ineffective assistance of trial counsel.

Supporting Facts:    Trial counsel failed to allocute Petitioner's sentence pursuant to
                     *Blakely v. Washington*, although the *Blakely* decision was
                     rendered on June 24, 2004 and Petitioner was sentenced on
                     December 9 2004 (old law vis-a-vis new law).

Ground Three:        State Court judgment contrary to clearly established federal law
                     as determined by U.S. Supreme Court.

Supporting Facts:    State appellate court denied relief based solely on the fact that
                     the sentence was an agreed to sentence, when as a matter of fact
                     no agreed sentence was ever executed thereby demonstrating
                     that state appellate court decision was based on information
                     known only by that court in violation of *Tumey v. Ohio*
                     (structural defect).

9

| | |
|---|---|
| Ground Four: | Federal habeas corpus relief must be made permanent. |
| Supporting Facts: | No state court remedy exists to remedy *Blakely* violation in light of *State v. Foster*, (2006), 109 Ohio St.3d 1, because *Foster* violates *ex post facto* & double jeopardy protections if habeas corpus remands for re-sentencing. |

(Doc. #1 at 5-10).  White notes, "Ground four is not a claim ... [and] is relevant only to the remedy warranted.  (Doc. #1 at 10). Respondent asserts, for many reasons, that none of White's grounds for relief have merit.  (Doc. #8).

## V.     DISCUSSION

### A.     <u>Habeas Corpus and the AEDPA</u>[2]

Federal habeas corpus relief is available under the AEDPA only when the state court adjudication of a federal constitutional claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. §2254(d)(1).

"The 'contrary to' and 'unreasonable application' clauses of § 2254(d)(1) have separate meanings.  Under the 'contrary to' clause, a federal court may issue the writ if 'the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts."  *Sinkfield,* 487 F.3d at 1016 (quoting in part *Bell v. Cone*, 535 U.S. 685, 694 (2002)(citing *Williams v. Taylor*, 529 U.S. 632, 540-05 (2000)).

---

[2]  The "AEDPA" refers to the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214.

"Under the 'unreasonable application' clause, a federal court may grant relief if 'the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case.' An unreasonable application of federal law is one that is 'objectively unreasonable' and not merely incorrect." *Sinkfield*, 487 F.3d at 1016 (citations omitted).

### B.    White's *Blakely* Claim

White contends that the sentencing judge violated his rights under the Sixth and Fourteenth Amendment by enhancing his sentence beyond statutory maximum/minimum of three (3) years based on judicial factfinding. According to White, this judicial factfinding in his case violated clearly established federal law set forth in Blakely.

Respondent contends that White's sentence did not violate his rights under *Blakely* because, as the Ohio Court of Appeals emphasized, White agreed to the sentence he received. This is correct because Respondent has hit upon the key difference between White's case and *Blakely*. Unlike the defendant in *Blakely*, White received the exact length of sentence he agreed. The defendant in *Blakely* did not; he instead received the "exceptional" sentence of 90 months, rather than the agreed 53 months, based on the sentencing judge's finding that he had acted with "deliberate cruelty," a fact neither found by a jury nor admitted by the defendant. 542 U.S. at 298-303. *Blakely* does not hold that a sentence like White's based in part on the parties' agreed length of sentence that is below the statutory maximum violates the Sixth and Fourteenth Amendment. Because White obtained the exact length of sentence he agreed to – a sentence eight years less than the maximum sentence he could have received

11

– his sentence did not violate his rights under *Blakely*, *Apprendi*, or the Sixth Amendment. *See Warren v. Warden*, 2008 WL 1732976 at *5 (S.D. Ohio 2008)(Barrett, D.J.); *see also Craig v. Moore*, 2008 WL 339628 at *3-4 (S.D. Ohio 2008)(Dlott, D.J.); *Suttles v. Warden*, 2007 WL 2110498 at 7-11 (S.D. Ohio 2007)(Spiegel, D.J.; Hogan, M.J.).

White's sentence also did not violate *Blakely* because the sentencing judge based White's sentence in part on his prior convictions – a factor that need not be submitted to a jury under *Blakely* or *Apprendi*. *See Blakely,* 542 U.S. at 301; *see also Apprendi*, 530 U.S. at 490.

White contends otherwise by alleging that he did not agree to the sentence he received. To support his asserted non-agreement, White relies on his attorney's statement during the sentencing hearing that White was not agreeing to the reasons presented by the prosecutor in support of the sentence. *See* Doc. #12 at 2, 5-6. While it is true that White (through counsel) did not agree with the prosecutor's reasons in support of the sentence, *see supra*, §III(A), this does not show that White did not agree to the length of sentence that he actually received. Instead, the transcript of the sentencing hearing conclusively establishes the fact that White agreed to the exact length of sentence he received, even though he did not agree with the prosecutor's reasons for the sentence. *See* Doc. #8, Exh. 21 at 5-9.

Respondent further contends that assuming *arguendo* White's sentence was based on judicial factfinding in violation of *Blakely*, the error was harmless.

The Supreme Court has held that a *Blakely* error does not constitute a structural error requiring automatic reversal of a defendant's sentence. *Washington v. Recuenco*, 548 U.S.

12

212, 222 (2006). In a different context – direct appeal of a federal criminal sentence, when a defendant preserves a *Blakely* claim, the United States Court of Appeals for the Sixth Circuit reviews the claim for harmless error. *See United States v. McBride*, 434 F.3d 470, 473 (6th Cir. 2006). In that context, however, harmless error often occurs because the District Court provided alternative sentences (in anticipation of *United States v. Booker*, 543 U.S. 200 (2005)). White's AEDPA-controlled case presents a different situation: no alternative sentence was provided by the state sentencing judge, and the Ohio Court of Appeals did not engage in a harmless-error analysis of White's *Blakely* claim. *See* Doc. #8, Exh. 13.

Yet, the insurmountable problem White faces – whether characterized as harmless error or some other standard of review – is that he cannot obtain under Ohio law the minimum sentence he now seeks under *State v. Foster*. Recalling that the Ohio Supreme Court in *Foster* applied *Apprendi* and *Blakely* to invalidate certain Ohio sentencing statutes, *supra*, §II, the Ohio Supreme Court rejected the proposed remedy the defendants had sought – the same result White now seeks – by declining to remand the cases at issue for resentencing to the mandatory minimum statutes. The Ohio Supreme Court has more recently explained:

> Indeed, *Foster* represents a Pyrrhic victory for ... defendants affected by its holding. Although defendants were successful in arguing the unconstitutionality of the sections of statutes that required judicial findings for the imposition of higher than minimum sanctions, we did not adopt their proposed remedy of mandatory minimum sentences. Since *Foster*, trial courts no longer must navigate the series of criteria that dictate the sentence and ignore judicial discretion.

*Payne*, 114 Ohio St.3d at 507. The Sixth Circuit Court of Appeals has agreed, noting, "the

new structure actually works to [the defendant's] detriment, as trial courts are no longer required to make any findings or give any reasons when imposing consecutive sentences." *Minor v. Wilson*, 213 Fed.Appx. 450, 453 n.1 (6th Cir. 2007). As a result, even if the Court assumes *arguendo*, that White's sentence violated his federal constitutional rights under *Apprendi, Blakely*, and *Foster*, the resulting writ of habeas corpus would not require resentencing him to a minimum mandatory sentence, but would instead entitle him to resentencing with the possibility that he could receive a greater sentence, perhaps the maximum total of eighteen years, than he is presently serving. *See Payne*, 114 Ohio St.3d at 507; *Foster*, 109 Ohio St.3d at 2 (Ohio "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences."); *Minor v. Wilson*, 213 Fed.Appx. 450, 453 n.1

Accordingly, for all of the above reasons, the Ohio Court of Appeals' rejection of White's *Apprendi*/*Blakely* claims was not contrary to and did not involve an unreasonable application of federal constitutional law.

### C. Ineffective Assistance of Counsel

White contends that his counsel provided constitutionally ineffective assistance by not raising a *Blakely* argument during the sentencing hearing in mitigation of the sentence imposed, particularly when *Blakely* had been decided six months before his December 2004 sentencing. According to White, counsel's failure to raise a *Blakely* argument omitted a "dead bang winner" or an error that was so obvious upon the trial court record that it would

14

have resulted in reversal on appeal.  (Doc. #12 at 8).  White maintains, "In not recognizing and raising this issue, counsel failed to raise the strongest arguments revealed by the record an omission that must be objectively deemed unreasonable."  *Id.* (citations omitted).

The Ohio Court of Appeals rejected White's ineffective assistance of counsel claim stating, "Because White agreed to the sentence he received, counsel also did not provide ineffective assistance by failing to present mitigating evidence at the sentencing hearing." (Doc. #8, Exh. 21 at 10-11).

To establish constitutionally ineffective assistance of counsel, a criminal defendant must show that his trial counsel's acts, errors, or omissions fell below an objective standard of reasonableness.  *Strickland v. Washington,* 466 U.S. 668, 687-88 (1984); *see Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Sparks v. Sowders*, 852 F.2d 882, 884 (6th Cir. 1988).  This demanding standard requires a defendant to establish that (1) his counsel provided deficient performance and (2) this deficient performance prejudiced his defense so as to render his trial fundamentally unfair and the result unreliable.  *Strickland*, 466 U.S. at 687.

The first *Strickland* prong mandates a highly deferential review of trial counsel's performance.  *Id*. at 689.  "[A] court must engage in the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...."  *Id*. at 689. When trial counsel's acts or omissions constituted trial strategy, his or her performance was not constitutionally deficient.  *Id*.  The second *Strickland* prong requires that trial counsel's "errors were so serious as to deprive ... [him] of a fair trial, a trial whose result is reliable."

*Broom v. Mitchell*, 441 F.3d 392, 408 (6ᵗʰ Cir. 2006) (citing *Strickland*, 466 U.S. at 687).

Because White's *Blakely* claim lacks merit, his counsel decision not to raise a *Blakely* argument was not objectively unreasonable. For the reasons stated previously, White's contention that his *Blakely* claim constituted a "dead bang winner" lacks merit. *See supra*, §V(B). In addition, even if it is assumed that counsel erred by not raising an objection to White's sentence based on his correct prediction of *Foster* – which was decided well after White's sentencing hearing – no prejudice resulted from this given the Pyrrhic victory for defendants that *Foster* represents. *See supra*, §V(B); *see also Suttles*, 2007 WL 2110498 at 11-12. *cf. United States v. Burgess*, 142 Fed.Appx. 232, 239-41 (6ᵗʰ Cir. 2005)(no ineffective assistance for counsel's failure to anticipate *Apprendi*, *Blakely* or *Booker*).

Accordingly, the Ohio court of Appeals' rejection of White's ineffective assistance of counsel claim was not contrary to and did not involve an unreasonable application of federal constitutional law.

### D. White's Remaining Claims and Motion

White claims in his Third Ground for Relief that the Ohio Court of Appeals' decision was based on solely on the fact that his sentence was an agreed sentence. This is constitutionally problematic, according to White, because there was no agreed sentence and consequently, the appellate court's decision was based on information known only to it in violation of *Tumey v. Ohio*. (Doc. #1 at 8). This contention lacks merit because it is based upon the faulty premise that his sentence was not an agreed sentence. As explained above, the sentencing transcript establishes that White agreed to the precise length of sentence he

16

received.  *See supra*, §V(B).  White's Third Ground for Relief lacks merit.

White acknowledges in his Petition that his Fourth Ground for Relief is not a separate claim, but instead seeks a specific type of relief, a writ of habeas corpus requiring his immediate release.  He contends that any order requiring or permitting the state court to resentence him would violate his federal constitutional rights (*ex post facto* and double jeopardy violations).  (Doc. #1 at 9-12; Doc. #12 at 11-17; Doc. #13; Doc. #16).  Because White's *Apprendi / Blakely* claims do not entitle him to relief, he is not entitled to the remedy he seeks – the issuance of a writ of habeas corpus requiring his immediate release from incarceration.  Consequently, the Court his Fourth Ground for Relief does not provide an independent basis for granting him federal habeas relief.

Lastly, White's Motion for Summary Judgment seeks his immediate relief from incarceration mainly based on the assertion that there is no factual dispute over his non-agreement to the sentence he received.  White's Motion for Summary Judgment lacks merit because the transcript of the sentencing hearing establishes that he agreed to the specific length of sentence he received, and because his claims otherwise do not entitled him to federal habeas corpus relief.

## VI.    CERTIFICATE OF APPEALABILITY

Before White may appeal a denial of his habeas petition, he must first obtain a certificate of appealability.  28 U.S.C. §2253(c)(1)(A).

To obtain a certificate of appealability when a habeas petition is denied on the merits,

  
the petitioner must make a substantial showing of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This is accomplished by showing that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Slack*, 529 U.S. at 484 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).

For the reasons stated throughout this Report, reasonable jurists could not debate that White's claims lack merit under the AEDPA, and that as a result, he is not entitled to a writ of habeas corpus. White's claims therefore fail to make a substantial showing of a denial of his constitutional rights and his habeas Petition, his contentions, and the record as a whole do not otherwise present issues adequate to deserve encouragement to proceed further. Consequently, a certificate of appealability should not issue.

## IT IS THEREFORE RECOMMENDED THAT:

1.    Petitioner Gregory C. White's Petition for Writ of Habeas Corpus (Doc. #1) be DENIED;

2.    Petitioner's Motion for Summary Judgment (Doc. #13) be DENIED;

3.    A certificate of appealability under 28 U.S.C. §2253(c) not issue; and

3.    The case be terminated on the docket of the Court.

July 11, 2008

                    s/ Sharon L. Ovington
                    Sharon L. Ovington
                    United States Magistrate Judge

18

19

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).